UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

COLLETTE DWYER

VERSUS

WEST FELICIANA FIRE DISTRICT NO. 1

CIVIL ACTION

NO. 11-357-JJB

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is a motion for summary judgment filed by defendant West Feliciana Fire Protection District No. 1 ("District 1") against plaintiff Collette Dwyer. (Doc. 17). Dwyer filed an opposition (Doc. 21), and District 1 filed a reply (Doc. 25). Oral argument is unnecessary. Jurisdiction exists under 28 U.S.C. § 1331.

I.

Plaintiff Dwyer has worked for District 1, which provides fire protection services in and around St. Francisville, Louisiana, since September 1999, first as a secretary and later as a firefighter. On January 11, 2010, the Board of Commissioners ("BOC") which governs District 1 adopted a restructuring proposal that abolished Dwyer's position. She was the only firefighter working for District 1, and her position was the only position classified as a firefighter within the meaning of Louisiana's civil service laws. Because there was no lower classified position available, the restructuring which abolished Dwyer's position also terminated her employment with District 1.

Dwyer appealed that action to the three-member Civil Service Board ("CSB") governing District 1. Because Dwyer was a member of the Board, she had to recuse herself, and only two members heard her appeal. Those members rendered a tie decision, which operated to affirm District 1's action. Dwyer appealed that decision to the 20th Judicial District Court for the

1

Parish of West Feliciana. That court affirmed the Board's decision, stating "[t]he action of the [BOC] was made for purely economic reasons in good faith and for cause." (Transcript of District Court Proceeding, Doc. 17-4, at 77). Dwyer further appealed the state district court's decision to Louisiana's First Circuit Court of Appeal, which also affirmed. *Dwyer v. West Feliciana Fire Protection District No. 1*, No. 2011-1096, 2011 WL 6412094 (La. App. 1st Cir. Dec. 21, 2011). Dwyer filed no further appeals, and those determinations are now final.

On May 31, 2011, she filed this action, alleging one claim of gender discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.* (Doc. 1). District 1 moves for summary judgment, asserting Dwyer's prior state court proceedings preclude her Title VII claim.

II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions

will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991), *cert. denied*, 507 U.S. 1051. If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

III.

District 1 argues Dwyer's previous litigation in the CSB and state court preclude this action, based on principles of both claim preclusion (*i.e., res judicata*) and issue preclusion (*i.e., collateral estoppel*). Dwyer argues the CSB did not have authority to adjudicate the discrimination claim, thus preventing Dwyer from a "full and fair opportunity" to litigate her precise claim until now.

A.

Federal courts must give state court judgments "the same full faith and credit … as they have by law or usage in the courts of such state." 28 U.S.C. § 1738. The Supreme Court in *Kremer v. Chemical Construction Corp.*, 456 U.S. 461 (1982), established a two part test to determine: (1) whether the law of the state in which the prior judgment is rendered would give that judgment preclusive effect against the claims asserted in the federal action; and (2) whether the party against whom preclusion is asserted had a full and fair opportunity in the state proceedings to litigate the claims. 456 U.S. at 481-82.

Because the circumstances surrounding Dwyer's termination was adjudicated by the administrative and judicial branches of Louisiana, the Court must apply Louisiana's preclusion

law.  Louisiana's preclusion statute, La. Rev. Stat. 13:4231, mandates claim preclusion as follows:

> If judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

La. R.S. 13:4231(2).  Likewise, issue preclusion may also attach:

> A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

La. R.S. 13:4231(3).

Louisiana law would plainly preclude Dwyer's Title VII gender discrimination claim because it arose from her position's abolition and her termination from employment with District 1, the precise "occurrence" giving rise to her claims before the CSB and the state courts. Therefore, the first prong of the *Kremer* test is met because Louisiana law would claim preclude the cause of action asserted here.

B.

*Kremer*'s second prong tests the due process sufficiency of the previous proceedings. This inquiry examines how Louisiana law structures and empowers the adjudicatory bodies that previously passed on Dwyer's claims.

Dwyer's claims were governed by La. R.S. 33:2561.  This statute, as part of Louisiana's comprehensive civil service laws, establishes procedures for classified employees employed by the fire and police civil service boards of small municipalities to appeal adverse employment actions.  *See* La. R.S. 33:2561(A) ("Any regular employee in the classified service who feels that he has been discharged … without just cause may … demand in writing a hearing and

investigation by the board to determine the reasonableness of the action."). The relevant CSB must, after receiving evidence, determine whether "the action was or was not taken in good faith for cause...." La. R.S. 33:2561(B)(2). The courts have defined "good faith" to be "*the opposite of arbitrary or capricious action or of action that stems from prejudice* or political expediency on the part of the appointing authority." *Cherry v. Monroe Municipal Fire & Police Civil Service Bd.*, 514 So.2d 738, 739 (La. App. 2d Cir. 1987) (emphasis added); *see also Dyer v. City of Oakdale*, 542 So.2d 1138, 1142 (La. App. 3d Cir. 1989) ("[T]he Board did not act arbitrarily or discriminatorily in sustaining the dismissal of plaintiff so as to abuse its discretion."); *Ryder v. Pineville Civil Service Bd.*, 351 So.2d 299, 300 (La. App. 3d Cir. 1977) (affirming district court's decision under Section 2561 that abolition of plaintiff's position and plaintiff's subsequent reclassification to a lower position was neither arbitrary nor discriminatory).

Finally, the Court must recognize the express statutory authority Louisiana has vested in fire protection districts to determine discrimination claims. Specifically, La. R.S. 33:2544 states, in pertinent part, as follows:

> Whenever the board finds any change in the duties of any position in the classified service was brought about by the appointing authority to effect a reduction in the classification of any employee because of political, religious or discriminatory reasons, or without just cause, it shall refuse to recognize any such action, and shall order the appointing authority to continue the employee in the position and class with all rights and privileges.

While the plain text of the statute refers to reductions in classification, it would be a peculiar scheme which empowered the CSBs to inquire into discriminatory motive for the lesser action of a reduction in employment status while denying CSBs the power to make the same inquiry on the greater action of wholesale termination. Perhaps in order to avoid attributing to the legislature an intent which would lead to such a strange result, Louisiana appellate courts have

5

consistently interpreted the "in good faith for cause" language in La. R.S. 33:2561 to embrace a discrimination inquiry, as reflected in the more detailed directions to the CSBs contained in La. R.S. 33:2544. Defining "good faith" as inclusive of an ability to examine state action for discriminatory motive is thus reasonable and supported by the statutory scheme. The Court therefore concludes that CSBs for small municipalities have statutory power to adjudicate employment discrimination issues—including race and gender discrimination—when hearing a dispute under La. R.S. 33:2561.[1] An employment action could not be performed "in good faith" if motivated by racial or gender bias. *See Moore v. Ware*, 839 So.2d 940, 945 (La. 2003) ("Good faith does not occur if the appointing authority acted arbitrarily or capriciously, or as the result of prejudice or political expediency."). This conclusion accords with the position of the State Examiner of Municipal Fire and Police Civil Service, who is statutorily empowered to advise appointing authorities regarding their duties and obligations under the civil service laws. (*See* Doc. 25, Ex. E, at 46-47; *see also* La. R.S. 33:2539(5) (creating office of state examiner and defining duties)).

The only case Dwyer cites for a contrary proposition is inapposite. *City of New Iberia v. New Iberia Fire and Police Civil Service Bd.*, 896 So.2d 328 (La. App. 3d Cir. 2005), concerned review under La. R.S. 33:2501 of a city's decision to permit a parish-wide law enforcement district to take over police duties in the city from the city's civil service board. The city's agreement with the parish effectively caused the termination of over seventy of the city police employees, thirty-nine of whom filed grievances with the city CSB. It appears undisputed that "the City's decision to lay off employees [was] for budgetary reasons." Moreover, the former

---

[1] Whether other classifications protected by state and federal constitutional and statutory law from discrimination—such as age or disability—may also be litigated before the CSBs presents an issue beyond the scope of the facts here. Accordingly, the Court need not answer that question.

employees did not allege a violation of the preference systems based on the state Constitution. Therefore, the Third Circuit found the Board was without statutory authority to hear the grievances of the 39 former employees. 896 So.2d at 328-331. As *New Iberia* expressly indicates, this holding was hinged on the fact that "nothing in the statutory scheme … would give the Board the authority to review the Agreement." 896 So.2d at 330. This case has nothing to do with reviewing an agreement between the appointing authority and another entity.

C.

Because Dwyer had the ability to raise her gender bias claims in the administrative and state judicial proceedings, she had a "full and fair opportunity" to present the substance of her current gender discrimination claim before those bodies. Because she could have, but failed to, argue that ground, she is claim precluded from presenting her Title VII claim here.

Likewise, even though she did not present her gender bias contentions in her previous litigation, the issue of her employer's motive for enacting the abolition which resulted in Dwyer's termination has been. Both state courts reviewing the CSB ruling found District 1 acted out of *purely* economic reasons, which effectively rules out the possibility of invidious bias affecting the decision. Thus, because the motive of the board's action was an issue which was actually litigated and essential to the judgment, Dwyer is also issue precluded from raising the gender bias claims here.

IV.

Accordingly, West Feliciana Fire District No. 1's motion for summary judgment (Doc. 17) is hereby GRANTED.

Signed in Baton Rouge, Louisiana, on April 20, 2012.

**JAMES J. BRADY, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**